UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

| | |
|---|---|
| MELVYN EDELHERTZ and HELAINE EDELHERTZ REVOCABLE LIVING TRUST, | : |
| | : |
| | : |
| | : |
| Plaintiff, | : |
| | : |
| - against - | : |
| | : |
| CITY OF MIDDLETOWN, | : |
| | : |
| Defendant. | : |

**OPINION AND ORDER**
11-CV-1943 (ER)

-------------------------------------------------------------x

Appearances:

James G. Sweeney
James G. Sweeney, P.C.
Goshen, New York
*Attorney for Plaintiffs*

Alex Smith
Alex Smith, Esq.
Middletown, New York
*Attorney for Defendant*

Ramos, D.J.:

　　The Melvyn Edelhertz and Helaine Edelhertz Revocable Living Trust ("Plaintiff" or "Edelhertz")[1] brings this action against the City of Middletown ("Defendant" or the "City") pursuant to 42 U.S.C. § 1983, alleging violations of its procedural due process rights guaranteed by the Fourteenth Amendment to the U.S. Constitution. Plaintiff now moves for partial summary judgment on the issue of liability only and Defendant cross-moves for summary

---

[1] Melvyn and Helaine Edelhertz are the trustees of the Melvyn Edelhertz and Helaine Edelhertz Revocable Living Trust (the "Trust"). (Compl. ¶ 4.) The caption of this case, however, appears to incorrectly indicate that there are two separate Plaintiffs: (1) Melvyn Edelhertz; and (2) The Helaine Edelhertz Revocable Living Trust. As the Trust is the record owner of the property at issue in this matter, the Court treats it as the sole Plaintiff. (Affidavit of Melvyn Edelhertz in Supp. of Pl.'s Mot. for Summ. J. ("Edelhertz Aff.") ¶ 4.)

judgment.  For the reasons stated below, Plaintiff's motion is DENIED and Defendant's cross-motion is GRANTED.

## I. Factual Background

The following facts are undisputed unless otherwise indicated.[2]  Plaintiff is the owner of a multiple-dwelling building located at 57 Beattie Avenue in the City of Middletown, New York (the "Beattie Avenue property").  (Edelhertz Aff. ¶¶ 4-5.)  Melvyn and Helaine Edelhertz acquired the Beattie Avenue property in 1993 and transferred title to it to Plaintiff in 1995.  (*Id.*) The building has four units, and is a non-owner occupied nonconforming use located in the City's R-1 zoning district.  (*Id.* ¶¶ 5-9.)  As an owner of a non-owner occupied multiple dwelling in zone R-1, the City required Plaintiff to apply for and obtain a permit from the Commissioner of Public Works, which he obtained annually and which contained Plaintiff's correct name and address.  (*Id.* ¶ 9.)

On July 13, 2009, the Common Council of the City enacted an amendment to Chapter 475 of the Zoning Code of the City of Middletown to eliminate non-owner occupied multiple dwellings in various zoning districts, including zone R-1.  (Appx. in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Appx.") at 25-30.)  The amendment (the "Amortization Law") provided the following:

> Any multiple dwelling in existence in any R-1, R-2, or OR-2 zoning district as of
> the date of enactment of this Subsection . . . shall, at the expiration of five years

---

[2] In his 56.1 Statement, Plaintiff cites to paragraphs in the Complaint "as admitted by the Defendant ('the City') in its Answer."  (Pl.'s Stmt. Undisputed Facts Pursuant to Local Rule 56.1 ("Pl.'s 56.1 Stmt.") ¶ 1.)  The allegations made in the Complaint—a document that is evidence of nothing more than the existence of an accusation—are inadmissible hearsay, pursuant to Rules 801, 802, and 803 of the Federal Rules of Evidence.  *In re Blech Sec. Litig.,* 94 Civ. 7696 (RWS), 2003 WL 1610775, at *11 (S.D.N.Y. Mar. 26, 2003).  As the Second Circuit has held, a complaint is not admissible to prove the truth of its contents.  *Id.* (citing *Stevenson v. Hearst Consol. Publ'ns, Inc.,* 214 F.2d 902, 907 (2d Cir.1954)).  However, Plaintiff has provided two affidavits, made upon personal knowledge, and an appendix that support assertions in his 56.1 Statement.  Therefore, although Plaintiff has failed to follow Local Rule 56.1 where he cites to the Complaint for support, the Court will accept any 56.1 statement of fact that is supported by an admissible document Plaintiff has submitted, even if Plaintiff has not cited to it.

from such date, become a prohibited and unlawful use and shall be discontinued, excepting, however, that this Subsection . . . shall not apply to any multiple dwelling which is owner-occupied, and further excepting that this Subsection . . . shall not apply to any multiple dwelling for which it is structurally unreasonable to convert into a lawful use in the subject zoning district. The determination as to whether it is structurally unreasonable to convert a particular multiple dwelling into a lawful use shall be made by the Commissioner of Public Works.

(*Id.* at 60.)

The zoning districts affected by the Amortization Law contained a total of 142 multiple dwellings. (*Id.* at 31.) Since 1995, 128 of them were cited for code violations, and between 2005 and 2010, there were police calls to 140 of those 142 dwellings—accounting for a total of 3,790 police calls. (*Id.* at 31-32.) The Common Council determined that the prevalence of boardinghouses and apartments in multiple dwellings in those areas was the cause of increased code violations and criminal activity. (*Id.* at 31, 43.) Consequently, the Council enacted the Amortization Law to eliminate multiple dwellings, finding that they were undesirable, out of character, and impaired the orderly development and general welfare of the affected zoning districts. (*Id.* at 25.)

The Common Council gave notice of the proposed enactment of the Amortization Law to any interested person through a "Public Hearing Notice" published in the legal classified advertisements of the Times Herald Record, the primary newspaper of Middletown and Orange Counties, on May 29 and 30, 2009. (Pl.'s Appx. at 23; Aff. of Alex Smith in Supp. of Def's Cross Mot. for Summ. J. ("Smith Aff.") ¶ 11, Ex. B.)[3] The public hearing was held on June 8, 2009. (Pl.'s Appx. at 24.)[4] Only one person appeared at the hearing and spoke in favor of the

---

[3] Although neither Plaintiff nor Defendant have provided the Court with a true and correct copy of Section 475.51(D) of the City's Zoning Code, they do not dispute that it does not require individualized mailed notice before the Common Council holds a public hearing. Rather, the Code requires notice to be given by publication on two successive days in the "official City newspaper." (Smith Aff. ¶ 11.)

[4] Plaintiff does not purport that page 24 of its Appendix is a certified copy of a public record pursuant to Federal Rule of Evidence 902(4), and it is questionable whether this document would be admissible at trial under this rule.

Amortization Law; no one appeared to speak against it. (*Id.* at 24.) The Council did not mail or deliver the notice to the Plaintiff or to any owner of the affected multiple dwellings, despite having knowledge of Plaintiff's correct name and mailing address. (Edelhertz Aff. ¶¶ 9, 17, 21.)

On August 12, 2010, more than one year after the enactment of the Amortization Law, Plaintiff entered into a contract to sell the Beattie Avenue property to Composite LLC for $215,000. (*Id.* ¶ 10.) In the contract, Plaintiff represented to Composite that the Beattie Avenue property was a lawful multiple dwelling, but through a title report, Composite's attorney became aware of the existence of the Amortization Law. (*Id.* ¶¶ 12-13.)[5] Both Edelhertz's attorney and Composite's attorney attempted to secure verification from the City that the Beattie Avenue property was a lawful nonconforming use and would be allowed to continue as such notwithstanding the Amortization Law, but never received a response. (*Id.* ¶ 14.) In early October 2010, Edelhertz's attorney further sought a specific determination from the City that the Beattie Avenue property could not be structurally altered to a conforming use, to which the Commissioner of Public Works did not respond. (*Id* ¶ 15.) On October 6, 2010, the Commissioner sent Plaintiff a form-letter notifying him of the enactment of the Amortization Law. (*Id.* ¶ 16.) On October 26, 2010, Composite withdrew its offer to purchase the Beattie Avenue property. (Pl.'s Appx. at 36.) Plaintiff never filed an Article 78 proceeding in state court. (Smith Aff. ¶ 20.)

Defendant does not dispute any material fact set forth in Plaintiff's 56.1 Statement, nor does Plaintiff dispute any material fact submitted by Defendant. Rather, the parties dispute in

___

However, as Defendant does not dispute the accuracy of the information therein, and there is no dispute that a hearing was held, the Court accepts as true that the Common Council held a public hearing on June 8, 2009.

[5] Defendant disputes that Plaintiff did not have knowledge of the Amortization Law until after the signing of the contract. (Smith Aff. ¶ 18, Ex. C.) Rather, Defendant contends that the first paragraph in the rider to the contract references the Amortization Law and makes the contract contingent upon exemption of the property from the ordinance. (*Id.*) This disputed fact, however, is immaterial to the inquiry of whether the City provided Plaintiff with adequate notice of the hearing at which the Amortization Law was enacted.

4

their cross motions what form of notice Defendant was constitutionally required to provide to Plaintiff in satisfaction of the Due Process Clause before depriving him of a protected property right.  Plaintiff argues that the City was required to provide him with notice by mail, while Defendant contends that notice by publication was sufficient.

## II. Summary Judgment Standard

Summary judgment is only appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.,* 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir.2009)). A fact is "material" if it might affect the outcome of the litigation under the relevant law. *Id.*  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

The burden then shifts to the party opposing summary judgment to present evidence that is sufficient to satisfy every element of the claim and "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. 317 at 324 (quotation marks omitted). "Summary judgment is properly granted when the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial .'" *Abramson v. Pataki,* 278 F.3d 93, 101 (2d Cir. 2002) (quoting *Celotex Corp.,* 477 U.S. at 322).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.,* No. 09 Civ. 4551, 2011 WL 2750916, at *7 (2d Cir. July 18, 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).   However, in opposing a motion for summary judgment, the nonmoving part may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir. 1995). A motion for summary judgment cannot be defeated on the basis of mere denials or unsupported alternative explanations of facts. *Senno,* 812 F.Supp.2d at 467 (citing *Scotto v. Almenas,* 143 F.3d 105, 114 (2d Cir.1998)). The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts," *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir.2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)), "[she] must set forth significant, probative evidence on which a reasonable fact-finder could decide in [her] favor." *Senno,* 812 F.Supp.2d at 467–68 (citing *Anderson v. Liberty Lobby,* 477 U.S. 242, 256–57 (1986)).

When cross motions for summary judgment are made, each party's motion must be assessed on its own merits.  *Morales v. Quintel Entm't, Inc.,* 249 F.3d 115, 121 (2d Cir. 2001) (citing *Schwabenbauer v. Bd. of Educ.,* 667 F.2d 305, 314 (2d Cir.1981)). The court must view the evidence in the light most favorable to the party opposing the motion, *Wachovia Bank, Nat. Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011) *cert. denied*, 132 S. Ct. 2439, 182 L. Ed. 2d 1063 (U.S. 2012), and "in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 57 (2d Cir. 2012) (quoting *Morales*, 249 F.3d at 121).

6

## III. Discussion

Section 1983 protects against state action that violates a property owner's right to due process under the Fourteenth Amendment to the U.S. Constitution. *G.I. Home Developing Corp. v. Weis*, No. 07-CV-4115 (DRH), 2009 WL 962696, at \*5 (E.D.N.Y. Mar. 31, 2009) (quoting *Bower Assocs. v. Town of Pleasant Valley*, 2 N.Y.3d 617, 627, N.Y.S.2d 240, 814 N.E.2d 410 (2004)). To determine whether a procedural due process violation has occurred, courts must engage in a two-step analysis: first, a court must determine whether there exists a property interest of which a person has been deprived; and if so, a court must next determine if the procedures followed by the state were constitutionally sufficient. *Swarthout v. Cooke*, --- U.S. ----, 131 S. Ct. 859, 861 (2011); *Oneida Indian Nation of New York v. Madison Cty.*, 665 F.3d 408 (2d Cir. 2011).

### A. Constitutionally Protected Property Right

To possess a federally protected property interest, a person must have a legitimate claim of entitlement to it. *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Such a claim does not arise from the Constitution, but rather from an independent source such as state or local law. *Id.*; *Donato v. Plainview-Old Bethpage Cent. Sch. Dist.*, 96 F.3d 623, 629 (2d Cir. 1996); *G.I. Home Developing Corp*, 2009 WL 962696, at \*5. "An abstract need, desire or unilateral expectation is not enough." *Abramson v. Pataki*, 278 F.3d 93, 99 (2d Cir. 2002) (citing *Roth*, 408 U.S. at 577). Under New York law, a nonconforming use that predates the enactment of a restrictive zoning ordinance is a vested right and is entitled to constitutional protection. *Norton v. Town of Islip*, 239 F. Supp. 2d 264, 270 (E.D.N.Y. 2003) *aff'd*, 77 F. App'x 56 (2d Cir. 2003) (citing *Town of Somers v. Camarco*, 308 N.Y. 537, 541 127 N.E.2d 327 (N.Y.1955); *Keller v. Haller,* 226 A.D.2d 639, 641 N.Y.S.2d 380 (2d Dept.1996)). A vested nonconforming

use is defined as one that came into existence before enactment of the zoning ordinance that prohibits its use, and that is continuously maintained after the zoning changes take effect. *Greene v. Town of Blooming Grove*, 879 F.2d 1061, 1065 (2d Cir. 1989) (citing *City of New York v. Bilynn Realty Corp.,* 118 A.D.2d 511, 499 N.Y.S.2d 1011, 1014 (1st Dep't 1986)).

In the instant matter, it is undisputed that Plaintiff had a vested property right in the nonconforming use of his property as a non-owner occupied multiple dwelling.  Though it is unclear from the record when exactly the Beattie Avenue property became a nonconforming use, it is clear that a non-owner occupied multiple dwelling is a nonconforming use in zone R-1, and that Plaintiff has maintained the property as such since obtaining title to it in 1993.  (Pl.'s Appx. at 57-60; Edelhertz Aff. ¶¶ 4-8.)   Plaintiff's nonconforming use remained in effect upon enactment of the Amortization Law, which mandated its discontinuance within five years. (Edelhertz Aff. ¶¶ 4-6; Pl.'s Appx. at 25-30, 60.) Thus, Plaintiff had a vested property right in the maintenance of the Beattie Avenue property as a nonconforming use.

### B.  The Amortization Law Was Legislative Action

Before a deprivation of a property interest occurs, the Due Process Clause requires, at a minimum, that the government provide "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950).  However, due process protections are not required when the government takes action that is legislative rather than adjudicative.  *RR Vill. Ass'n., Inc. v. Denver Sewer Corp.*, 826 F.2d 1197, 1204 (2d Cir. 1987).   The Supreme Court has not recognized a constitutional right to participate directly in legislative action because of the "massive intrusion into state and federal policymaking" that would result.  *Minnesota State Bd. for Cmty. Colls. v.*

*Knight*, 465 U.S. 271, 284-85 (1984).  "Government makes so many policy decisions affecting so many people that it would likely grind to a halt were policymaking constrained by constitutional requirements on whose voices must be heard."  *Id.* at 285.  "Instead, the public may influence the legislative process by effectuating its power over those elected officials through, *inter alia*, the electoral process."  *Kittay v. Giuliani*, 112 F. Supp. 2d 342, 353 (S.D.N.Y. 2000) *aff'd*, 252 F.3d 645 (2d Cir. 2001).  Thus, due process "does not require any hearing or participation in legislative decisionmaking other than that afforded by judicial review after rule promulgation."  *Interport Pilots Agency, Inc. v. Sammis*, 14 F.3d 133, 142 (2d Cir. 1994) (internal citation and quotation marks omitted).

In the Second Circuit, "the test for determining whether official action is adjudicative or legislative focuses on the function performed by the decisionmaker, not on the method of selecting the decisionmaker, or on the form in which the decision is announced."  *RR Vill. Ass'n.*, 826 F.2d at 1204 (internal citations omitted).  Action is adjudicative when it is based on "facts about the parties and their activities, businesses, and properties," *Langevin v. Chenango Court, Inc.*, 447 F.2d 296, 300 (2d Cir. 1970), and "designed to adjudicate disputed facts in particular cases."  *United States v. Florida E. Coast Ry. Co.*, 410 U.S. 224, 245 (1973).  On the other hand, government action is legislative when it considers "general facts which help the tribunal decide questions of law and policy and discretion," *Langevin,* 447 F.2d at 300, and when it has "general application and look[s] to the future."  *Sammis*, 14 F.3d at 143.  Adjudicative decisions apply a statute or legal standard "to a given fact situation involving particular individuals," whereas legislative action entails "the formulation of a general rule to be applied . . . at a subsequent time."  *Air Line Pilots Assn., Intern. v. Quesada*, 276 F.2d 892, 896 (2d Cir. 1960).  Procedural due process claims "must be dismissed when they challenge purely legislative action."

*O'Bradovich v. Village of Tuackhoe*, 325 F. Supp. 2d 413, 429 (S.D.N.Y 2004) (quoting *Sammis*, 14 F.3d at 142).

Plaintiff argues that enacting the Amortization Law was adjudicative—and not legislative—action as to him because it was "based on a host of targeted facts" and was "retrospective in nature looking back over several years of examined activity." (Pl.'s Mem. at 16-17.)  Therefore, he asserts that he was entitled to individual notification of the proposed legislation.  *See infra* Part III.C.  However, the Common Council's decision to enact the Amortization Law "did not attempt to adjudicate particular facts as to any one [landowner] or group of [landowners]," *Sammis*, 14 F.3d at 143; *see also Quesada*, 276 F.2d at 896, nor was it enacted to single out any individual "for special consideration based on [her] own peculiar circumstances." *Florida E. Coast Ry. Co.*, 410 U.S. at 246.  Rather, the Common Council, acting in a policy-making capacity, considered facts relating generally to non-owner occupied multiple dwellings in the relevant zoning districts.  *Compare Sammis*, 14 F.3d at 143 (government action that placed restrictions on piloting was found to be legislative, as it "considered facts relating to pilotage *in general*, including environmental and safety concerns [and] economic factors") (emphasis added); *with RR Vill. Ass'n.*, 826 F.2d at 1205 (government action retroactively increasing cost of sewage disposal found to be adjudicative where there was no "consideration of facts relating to the sewage disposal industry *in general*, much less of questions of social or economic policy") (emphasis added).  Here, the Council found that non-owner occupied multiple dwellings *generally* impaired the orderly development and general welfare of certain zoning districts.  (Pl.'s  Appx. at 25-30.)  These findings were based on data indicating that the prevalence of non-owner occupied multiple dwellings was the cause of increased housing and sanitary code violations as well as criminal activity.  (*Id.* at 25, 31, 43).

As the Amortization Law applies "across the board to all" non-owner occupied multiple dwellings in the affected zoning districts, *Florida E. Coast Ry. Co.*, 410 U.S. at 246, and does "not seek to impose any retroactive penalty," *Sammis*, 14 F.3d at 143, but rather is forward looking, it cannot be considered an adjudicative decision by the Common Council.  Accordingly, because the City's enactment of the Amortization Law constitutes legislative action, Plaintiff was not entitled to due process protection before its enactment.  *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 174 (2d Cir. 2005) (quoting *Sammis,* 14 F.3d at 142).

## C.  Notice by Publication Was Sufficient

Plaintiff relies on the Supreme Court's general rule, first articulated in *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950), that notice by publication is insufficient upon someone whose name and address are "known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question."  *Schroeder v. City of New York*, 371 U.S. 208, 212-13 (1962); *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 800 (1983) ("Notice by mail or other means as certain to ensure actual notice is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party, whether unlettered or well versed in commercial practice, if its name and address are reasonably ascertainable.").  Here, it is undisputed that Defendant had knowledge of Plaintiff's identity and address before the June 8, 2009 hearing. (Edelhertz Aff. ¶ 9.)  It is further uncontested that the City did not effect notice upon the Plaintiff through the mails, but did so solely through publication in a local newspaper.  (Edelhertz Aff. ¶¶ 17, 21; Smith Aff., Ex. B.)  Thus, Plaintiff argues, it was not accorded due process because it did not receive actual, personal notice of the hearing before a deprivation of his property rights occurred.  However, the *Mullane*

rule is inapposite because the Due Process Clause does not apply to legislative action by the government. *See supra* Part III.B.  Thus, Plaintiff's argument is unavailing.

**IV. Conclusion**

Due to the foregoing, Plaintiff's motion for partial summary judgment is DENIED and Defendant's cross motion for summary judgment is GRANTED.  The Clerk of the Court is respectfully directed to terminate the motions (Docs. 14, 25) and to enter judgment in favor of Defendant.

It is SO ORDERED.

Dated:     September 14, 2012
           White Plains, New York

_____
Edgardo Ramos, U.S.D.J.